UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE ANNE O'NEAL, | No. 2:06-cv-02825-MCE-GGH |
| Plaintiff, | |
| v. | FINAL PRETRIAL ORDER |
| GC SERVICES LIMITED PARTNERSHIP, et al., | TRIAL DATE: **August 17, 2009**<br>TIME: **9:00 a.m.** |
| Defendants. | |

Pursuant to Court Order, a Final Pretrial Conference was held on July 2, 2009. Manolo Olaso, appeared as counsel for Plaintiff. William Helfand and Michael Chamberlin, appeared as counsel for Defendants. After hearing, the Court makes the following findings and orders:

I. JURISDICTION/VENUE

Jurisdiction is predicated upon 42 U.S.C. section 2000 et seq. Jurisdiction and venue are not contested.

///

///

II. <u>JURY</u>

Plaintiff timely demanded a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

III. <u>UNDISPUTED FACTUAL ISSUES</u>

The parties agree that the following facts will not be contested at trial:

(1) GC Services was and is a corporation organized under the laws of the State of Texas with its principle place of business in Texas. At all relevant times, GC Services was duly licensed and authorized to conduct business in the State of California.

(2) Plaintiff was hired by GC Services as a Superior Court Supervisor in September 2004. Plaintiff was promoted to a Regional Court Coordinator position in or around November 2004.

(3) Plaintiff remained in a Court Coordinator position until she was terminated in September 2005.

(4) As a Regional Court Coordinator, Plaintiff was expected to visit each of the Courts in her region in order to monitor the performance of the Court Supervisors and Representatives working in those Courts, ensure that appropriate procedures were being followed, deal with any issues that might arise and maintain good relationships with Superior Court personnel on behalf of GC Services.

///

///

///

1  (5)  GC Services received complaints from Superior Court
2 personnel in Plaintiff's Courts regarding her failure to
3 communicate with them regarding personnel changes and other
4 issues, unacceptably infrequent on-site visits, failure to
5 follow up with court representatives regarding timely completion
6 of required reports, failure to be at court locations when she
7 was supposed to be there and failure to return calls on a timely
8 basis.  Notwithstanding GC Services' receipt of complaints,
9 Plaintiff contends she did not have the foregoing performance
10 issues.
11  (6)  GC Services also received complaints from Plaintiff's
12 co-workers and subordinates that they were regularly unable to
13 locate her, she regularly failed to return phone calls and she
14 was often not where she said she would be.  Notwithstanding GC
15 Services' receipt of complaints, Plaintiff contends she did not
16 have the foregoing performance issues.
17  (7)  GC Services' Employee Handbook, which is issued to all
18 GC Services employees, provides that "no employee or any other
19 person in the GC Services workplace shall harass a GC Services
20 employee on the basis of sex.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

Sexual harassment includes, but is not limited to, unwelcome sexual advances; requests for sexual favors and other verbal or physical conduct of a sexual nature such as uninvited touching or sexually-related comments...offensive comments, innuendos, and other sexually orientated statements that have the purpose or effect of interfering with work performance, and/or creating an intimidating hostile or offensive working environment by such conduct."

(8)   GC Services' Employee Handbook further provides that "[e]ach member of management is responsible for setting an example of professionalism and for creating an atmosphere free of discrimination and harassment, sexual or otherwise."

(9)   GC Services' Employee Handbook sets out a complaint procedure for any employee who believes he or she has experienced sexual harassment in the workplace.  Specifically, employees are instructed to immediately report any incident of harassment to the on-site manager or their supervisor who shall immediately report the matter to the on-site Manager of Human Resources.

(10) GC Services' handbook explicitly states "it is unlawful to retaliate against an employee for filing a complaint for sexual harassment...GC Services has adopted a policy that complainants and witnesses will not be subjected to any form of retaliation for having made a good faith complaint or having participated in good faith in any investigation of alleged harassment."

(11) Plaintiff received GC Services' Employee Handbook and executed an acknowledgement form confirming that she had received these policies, was aware of them, and would comply with them.

(12) Plaintiff attended a "Preventing Sexual Harassment" sensitivity training event which covered procedures for reporting and investigating inappropriate workplace behavior and manager responsibilities to avoid inappropriate behavior constituting sexual harassment and to ensure a non-hostile work environment free from sexual harassment.

(13) Plaintiff and Dan Martin attended a sexual harassment training event together in or around November 2004 focused on recognizing various types of sexual harassment as well as the effects of such behavior so that participants could help GC Services maintain a work environment free from sexual harassment.

(14) Plaintiff acknowledged her receipt of, and agreement to comply with, GC Services' "Attendance Expectation" on October 8, 2004, which states:  "Attendance is a critical factor for our business...Managers and supervisors, while not required to track their time, are expected to be in attendance each day during work hours and when needed during peak times as the business needs may dictate…Managers/supervisors who fail to meet these performance expectations may find the result to be corrective action up to and including separation of their employment with the company."

(15) Defendant Dan Martin reported directly to Plaintiff during her employment as Court Coordinator -Northern California. Notwithstanding his reporting to Plaintiff, Plaintiff contends that Jamie Field ultimately had supervisory power over Defendant Martin.

(16) Plaintiff formally documented two separate occasions on which she counseled Dan Martin in connection with performance issues.

(17) Plaintiff never reprimanded or disciplined Dan Martin for any alleged sexual harassment.

(18) Plaintiff was issued a company gasoline credit card and authorized to use the credit card for business purposes only during her employment.

(19) Plaintiff engaged in multiple telephone conversations with Dan Martin in the months following her termination.

IV.  DISPUTED FACTUAL ISSUES

The remaining claim(s) for trial is/are:

**A.  Core Disputed Factual Issues Applicable to All Claims**

(1) Whether Plaintiff was terminated in August 2005 for performance deficiencies including inconsistent attendance, failure to provide timely notice when she was going to be absent, failure to properly supervise her assigned Courts, and the inability to locate her when she was supposed to be overseeing GC Services personnel in various Northern California Courts.

///

6

(2) Whether Dan Martin engaged in any unwelcome sexual conduct or comments toward Plaintiff.

(3) Whether Plaintiff reported to anyone at GC Services during her employment that she had been subjected to inappropriate sexual comments and conduct by her subordinate, individual Defendant Daniel Martin.

(4) Whether, if Plaintiff timely reported sexual harassment to anyone at GC Services during her employment, GC Services failed to timely investigate and, if appropriate, take corrective action related to Plaintiff's complaint.

(5) Whether Plaintiff engaged in multiple inappropriate acts during work and work-related events, including "flashing" her breasts to other GC Services' employees, including Dan Martin, discussing her sex life in intimate and graphic detail, and encouraging her co-workers to visit her internet website business "Babydolls.com," an online escort service.

**B. Disputed Facts Applicable to Plaintiff's First and Second Causes of Action for Sexual Harassment - Hostile Environment**

In addition to the Core Disputed Factual Issues set forth above, the following disputed facts are relevant to Plaintiff's First and Second Causes of Action for Hostile Environment Sexual Harassment.

(1) Whether individual Defendant Dan Martin subjected Plaintiff to unwelcome and inappropriate sexual comments or conduct.

    (2) Whether Dan Martin's conduct towards Plaintiff was so severe and pervasive as to alter the terms and conditions of her employment.

    (3) Whether a reasonable person in Plaintiff's position would have found Mr. Martin's conduct and/or comments to create a hostile or abusive working environment.

    (4) Whether Plaintiff subjectively viewed her work environment to be hostile or abusive as a result of Mr. Martin's conduct towards her.

    (5) Whether Plaintiff, through her actions and comments, indicated that Martin's conduct was welcome.

    (6) Whether Plaintiff suffered any actual harm as a result of Mr. Martin's alleged conduct.

    (7) Whether GC Services knew, or should have known, of Mr. Martin's alleged unlawful conduct and failed to take prompt remedial action.

    (8) Whether Plaintiff engaged in misconduct similar to that which forms the basis of her claims.

**C.  Disputed Facts Applicable to Plaintiff's Third and Fourth Causes of Action for Retaliation**

    (1) Whether Plaintiff reasonably believed she was being subjected to unlawful sexual harassment by Mr. Martin.

    (2) Whether Plaintiff complained to GC Services regarding Mr. Martin's allegedly unlawful conduct.

    (3) Whether Plaintiff was meeting GC Services' legitimate performance expectations.

(4) Whether Plaintiff was terminated in August 2005 for performance deficiencies including inconsistent attendance, failure to provide timely notice when she was going to be absent, failure to properly supervise her assigned Courts, and the inability to locate her when she was supposed to be overseeing GC Services personnel in various Northern California Courts.

(5) Whether a causal link exists between Plaintiff's complaints about Mr. Martin's allegedly unlawful conduct, if any, and GC Services' decision to terminate her employment.

**D. Disputed Facts Applicable to Plaintiff's Fifth and Sixth Cause of Action for Sexual Harassment - Failure to Prevent**

(1) Whether GC Services took reasonable steps to prevent sexual harassment in the workplace.

(2) Whether Plaintiff was subjected to unlawful sexual harassment.

(3) Whether any unlawful sexual harassment in the work place experienced by Plaintiff resulted from GC Services' failure to take reasonable steps to prevent sexual harassment in the work place.

**E. Disputed Facts Applicable to Plaintiff's Sixth Cause of Action for Negligent Hiring, Training, and Retention and Seventh Cause of Action for Negligence**

(1) Whether GC Services knew, or should have, known that individual Defendant Dan Martin was likely to engage in unlawful sexual harassment.

9

1     (2) Whether GC Services failed to take reasonable steps to
2 prevent unlawful sexual harassment of Plaintiff by Mr. Martin.
3     (3) Whether Plaintiff was, in fact, subjected to unlawful
4 sexual harassment.
5     (4) Whether GC Services' alleged failure to take
6 reasonable steps to prevent unlawful sexual harassment of
7 Plaintiff by Mr. Martin resulted in Mr. Martin's unlawful sexual
8 harassment of Plaintiff.
9     (5) Whether Plaintiff suffered any injury as a result of
10 Mr. Martin's alleged unlawful sexual harassment.

**F.   Disputed Facts Applicable to Plaintiff's Eighth Cause of Action for Assault**

13     (1) Whether Mr. Martin did touch or intended to touch
14 Plaintiff to place her in apprehension of immediate injury.
15     (2) Whether Plaintiff consented or welcomed Mr. Martin's
16 alleged touching.
17     (3) Whether Plaintiff was in fact placed in immediate
18 apprehension as a result of Mr. Martin's alleged touching or
19 intent to touch Plaintiff.
20     (4) Whether GC Services ratified Mr. Martin's alleged
21 unlawful touching or alleged intent to touch.
22     (5) Whether Mr. Martin's alleged unlawful touching or
23 intent to touch Plaintiff occurred in the course and scope of
24 his employment with GC Services.

**G.   Disputed Facts Applicable to Plaintiff's Ninth Cause of Action for Battery**

1    (1)   Whether individual Defendant Dan Martin touched
2 Plaintiff with the intent to harm or offend her.
3    (2)   Whether Plaintiff consented to any touching by Mr.
4 Martin
5    (3)   Whether Plaintiff was harmed or offended by Mr.
6 Martin's alleged unlawful touching.
7    (4)   Whether Plaintiff experienced any injury as a result
8 of Mr. Martin's alleged unlawful touching.
9    (5)   Whether GC Services ratified Mr. Martin's alleged
10 unlawful touching.
11    (6)   Whether Mr. Martin's alleged unlawful touching of
12 Plaintiff occurred in the course and scope of his employment
13 with GC Services.

   **H.   Disputed Facts Applicable to Damages**

15    (1)   Whether Plaintiff suffered any compensatory damages as
16 a result of Mr. Martin's alleged unlawful conduct.
17    (2)   Whether Plaintiff suffered any compensatory damages as
18 a result of GC Services' alleged unlawful conduct.
19    All issues of fact remaining in dispute are subject to
20 proof at the time of trial.
21    V.   WITNESSES
22    Plaintiff anticipates calling the witnesses listed on
23 Attachment "A".
24    Defendants anticipate calling the witnesses listed on
25 Attachment "B".
26 ///

11

1   Each party may call a witness designated by the other.
2       A.   No other witnesses will be permitted to testify
3   unless:
4           (1)   The party offering the witness demonstrates that
5   the witness is for the purpose of rebutting evidence which could
6   not be reasonably anticipated at the Final Pretrial Conference,
7   or
8           (2)   The witness was discovered after the Final
9   Pretrial Conference and the proffering party makes the showing
10  required in "B" below.
11      B.   Upon the post-pretrial discovery of witnesses, the
12  attorney shall promptly inform the Court and opposing parties of
13  the existence of the unlisted witnesses so that the Court may
14  consider at trial whether the witnesses shall be permitted to
15  testify.  The evidence will not be permitted unless:
16          (1)   The witnesses could not reasonably have been
17  discovered prior to pretrial;
18          (2)   The Court and opposing counsel were promptly
19  notified upon discovery of the witnesses;
20          (3)   If time permitted, counsel proffered the
21  witnesses for deposition;
22          (4)   If time did not permit, a reasonable summary of
23  the witnesses' testimony was provided by opposing counsel.
24      VI.   <u>EXHIBITS - SCHEDULES AND SUMMARIES</u>
25      At present, Plaintiff contemplates by way of exhibits those
26  listed on Attachment "C".

1   At present, Defendants contemplate by way of exhibits those
2  listed on Attachment "D".
3   **Plaintiff's exhibits shall be listed numerically.**
4  **Defendants' exhibits shall be listed alphabetically**.  The
5  parties shall use the standard exhibit stickers provided by the
6  Court Clerk's Office:  pink for Plaintiff and blue for
7  Defendants.  After three letters, note the number of letters in
8  parenthesis (i.e., "AAAA(4)" to reduce confusion during the
9  trial.  All multi-page exhibits shall be stapled or otherwise
10 fastened together and each page within the exhibit shall be
11 numbered.  All photographs shall be marked individually.  The
12 list of exhibits shall not include excerpts of depositions which
13 may be used to impeach witnesses.
14   Each party may use an exhibit designated by the other.  In
15 the event that Plaintiff and Defendants offer the same exhibit
16 during trial, that exhibit shall be referred to by the
17 designation the exhibit is <u>first</u> <u>identified</u>.  The Court cautions
18 the parties to pay attention to this detail so that all
19 concerned, including the jury, will not be confused by one
20 exhibit being identified with both a number and a letter.
21   A.   No other exhibits will be permitted to be introduced
22 unless:
23       (1)  The party proffering the exhibit demonstrates
24 that the exhibit is for the purpose of rebutting evidence which
25 could not be reasonably anticipated at the Pretrial Scheduling
26 Conference, or

13

   (2) The exhibit was discovered after the Pretrial Scheduling Conference and the proffering party makes the showing required in paragraph "B", below.

 B. Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform the Court and opposing counsel of the existence of such exhibits so that the Court may consider at trial their admissibility.  The exhibits will not be received unless the proffering party demonstrates:

   (1) The exhibits could not reasonably have been discovered prior to pretrial;

   (2) The Court and counsel were promptly informed of their existence;

   (3) Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

 C. As to each exhibit, each party is ordered to exchange a copy identical to the Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) by **August 10, 2009.** The attorney or representative for each party is directed to present the original exhibit(s) and two (2) copies to Stephanie Deutsch, Deputy Courtroom Clerk, no later than **3:00 p.m., August 10, 2009,** or at such earlier time as may be ordered by the Court.

///

    D.   **The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter. Each binder shall be no larger than three inches in width and have an identification label on the front and side panel**.

    E.   The parties shall provide an original plus two (2) copies of an exhibit list described above to Stephanie Deutsch, Courtroom Deputy Clerk, (corresponding to the marked exhibits). NO EXCEPTIONS.

    VII.   <u>DISCOVERY DOCUMENTS</u>

    A.   <u>Filing Depositions</u>. It is the duty of counsel to ensure that any deposition which is to be used at trial has been lodged with the Clerk of the Court. In addition, two unmarked copies of the transcripts must be delivered to Stephanie Deutsch, Courtroom Deputy Clerk. Counsel are cautioned that a failure to discharge this duty may result in the Court precluding use of the deposition or imposition of such other sanctions as the Court deems appropriate.

    B.   <u>Use of Depositions</u>. The parties are ordered to file with the Court and exchange between themselves by **August 10, 2009** a statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

///

///

///

C. <u>Interrogatories</u>. The parties are ordered to file with the Court and exchange between themselves by **August 10, 2009** the portions of Answers to Interrogatories which the respective parties intend to offer or read into evidence at the trial (except portions to be used only for impeachment or rebuttal).

VIII. <u>FURTHER DISCOVERY OR MOTIONS</u>

Pursuant to the Court's Pretrial Scheduling Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Final Pretrial Conference. That Order is confirmed. The parties are free to engage in informal agreements regarding discovery and law and motion matters. However, any such agreements will not be enforceable in this Court.

IX. <u>AGREED STATEMENTS - JOINT STATEMENT OF CASE</u>

It is mandatory the parties shall file a short, jointly-prepared statement concerning the nature of this case that will be read to the jury at the commencement of trial (**NO EXCEPTIONS**). The joint statement of the case shall include in plain concise language the claims of Plaintiff and claims of other parties, if any, and the corresponding defenses to the claims. The purpose of the joint statement of the case is to inform the jury at the outset, what the case is about. The statement must be filed with the Court by **August 10, 2009**.

///

///

///

X. PROPOSED JURY INSTRUCTIONS, VOIR DIRE, VERDICT FORM

A. Jury Instructions

Counsel are directed to meet and confer and to attempt to agree upon a joint set of jury instructions. Counsel shall use the Ninth Circuit Model Jury Instructions and any revisions. Alternate instruction or authority may only be used if a Ninth Circuit Model Jury Instruction is unavailable. The joint set of instructions must be filed by **August 10, 2009** and shall be identified as the "Jury Instructions Without Objection."

All instructions shall be, to the extent possible, concise, understandable, and free from argument. See Local Rule 51-163(c). Parties shall also note that any modifications of instructions from statutory authority, case law or from any form of pattern instructions must specifically state the modification by underlining additions and bracketing deletions.

B. Verdict Form

The parties must file a joint verdict form(s) concurrently with proposed jury instructions by **August 10, 2009**. If necessary, a special verdict or interrogatories shall be included for all factual disputes submitted to the jury that must be resolved before questions of law can be decided, and for any other issue on which specific responses are desired. See Local Rule 51-163(e).

///
///
///

C.  Voir Dire

The parties shall submit proposed voir dire questions to the Court. The Court reserves the right to conduct all examination of prospective jurors. Notwithstanding this reservation, the Court will permit each side up to ten (10) minutes to conduct voir dire, if desired. The voir dire questions shall be filed with the Court by **August 10, 2009.**

D.  Submission of Documents to the Court

At the time of filing their respective proposed jury instructions, verdict form(s), and voir dire questions, counsel shall also electronically mail to the Court in digital format and compatible with Microsoft Word or WordPerfect, the proposed jury instructions and verdict form(s). **These documents should be sent to mceorders@caed.uscourts.gov.**

XI.  AUDIO/VISUAL EQUIPMENT

The parties are required to file electronically a joint request to the Courtroom Deputy Clerk, Stephanie Deutsch, by **August 3, 2009** if they wish to reserve and arrange for orientation with all parties on the Court's mobile audio/visual equipment for presentation of evidence. There will be one date and time for such orientation.

///
///
///
///
///

18

XII. DATE AND LENGTH OF TRIAL

A trial is scheduled for **August 17, 2009.** The estimated length of trial is **six (6) days**. The trial will consist of **eight (8) jurors**. Counsel are to email Stephanie Deutsch, Courtroom Deputy Clerk, at mceorders@caed.uscourts.gov, or call at (916) 930-4207, by **August 10, 2009** to ascertain the status of the trial date.

The issue of punitive damages is bifurcated. Evidence relating to punitive damages will only be presented to the jury if the jury finds in favor of the Plaintiff as to general and/or special damages.

XIII. OBJECTIONS TO PRETRIAL ORDER

Each party is granted five (5) court days from the date of this Final Pretrial Order to object to any part of the order or to request augmentation to it. A Final Pretrial Order will be modified only upon a showing of manifest injustice. If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: July 29, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

19